IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10430
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRUCE HENRY HUMPHREY
and FAY CAROLYN HUMPHREY

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Northern District of Texas

_____

January 13, 1997

Before KING, JOLLY, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Bruce Henry Humphrey and Fay Carolyn Humphrey operated a loan brokerage service that was essentially a scam. They appeal from a jury verdict finding them guilty of seven counts of mail fraud and three counts of wire fraud. They also challenge their sentences. After reviewing the record, studying the briefs, and considering the arguments made to this court, we affirm the convictions and the sentences.

The primary issue we address is the validity of the search warrant authorizing the search of the defendants' home. We hold that an "all records" warrant for the search of a residence is

valid in the specific circumstances of this case where the residence was the primary place of business for the defendants, where the fraud was pervasive, where there was a significant overlap in the business and personal lives of the defendants, where the defendants maintained no known bank accounts, and where the warrant was limited to financial records.

I

For over two years, the Humphreys successfully ran a scheme designed to bilk capital-needy individuals seeking loans. The Humphreys called their organization H & H Consultants--later changed to Secure Investments--and advertised as a loan brokerage service.

Although the specific dealings of the Humphreys with the victims of their scam varied somewhat, the general pattern of behavior in all of the transactions was the same. Loan applicants would submit applications to H & H Consultants and would then be notified by letter that the company was "pleased to inform you that a commercial lender has approved your project for funding." Applicants, however, were informed that they had to make a deposit, usually $4250, to the Humphreys before a letter of approval could be sent from the lender. Many potential investors inquired whether this deposit was the only payment that would be required before receiving the loan and were assured that no more up-front money would be necessary. Upon payment of the deposit, the applicant would receive a letter from a financial institution that

conditioned any loan upon payment of a substantial amount of up-front money, generally between $7500 and $15,000. Since this was contrary to the arrangement with the Humphreys, most applicants sought to have their deposit refunded and were refused. Other applicants paid the fee requested by the financial institution and still never received financing.

Throughout the scheme, the Humphreys maintained no known bank accounts, choosing instead to use check cashing services to obtain cash from the deposits. The money collected through the scheme is unaccounted for, and the Humphreys now claim destitution.

The Humphreys were charged, in a ten-count indictment, with mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 in the execution of a scheme and artifice to defraud. The jury returned a guilty verdict on all ten counts and the Humphreys were each sentenced to forty-one months imprisonment per count, to run concurrently, and to three-year terms of supervised release. Both Bruce Henry Humphrey and Fay Carolyn Humphrey timely filed notices of appeal.

II

On appeal, the Humphreys assert six points of error. After considering each point of error individually, we conclude that the proceedings contain no reversible error.

A

The Humphreys argue that the district court erred by failing to suppress evidence found during a search of their residence,

because the search warrant was overbroad and failed to describe sufficiently the property to be seized. Prior to trial, the Humphreys filed motions to suppress evidence found in the search of their residence. The district court denied the motions, finding that the affidavit of the FBI agent established probable cause to believe that the Humphreys were running a fraudulent business, that the FBI had information that the Humphreys were using their business address only sporadically, that the affidavit provided probable cause to believe that the documents of the type listed in an attachment would be found at the Humphreys' residence, and that the description of the types of property to be seized was sufficient under the circumstances. We review the trial court's findings of fact related to the denial of a motion to suppress for clear error, United States v. Harrison, 918 F.2d 469, 472 (5th Cir. 1990); however, we review conclusions of law related to the sufficiency of the warrant de novo. United States v. Richardson, 943 F.2d 547, 549 (5th Cir. 1991); see also United States v. Rabe, 848 F.2d 994, 997 (9th Cir. 1988).

The warrant authorizing the search of the Humphreys' residence included a list of four generic categories of property, all related to financial records, to be seized.[1] The search warrant was

_____

[1]The search warrant authorized the seizure of:
1. Books, records, receipts, notes, ledgers and other documents relating to financial transactions and relationships with financial institutions.
2. Ledger paper, column paper, check

-4-

supported by a three-page affidavit from an FBI agent engaged in the investigation of the Humphreys. The affidavit establishes that at least a portion of the Humphreys' home was furnished with office equipment, that the Humphreys rarely utilized their rented office space other than as a mailing address and as a telephone message center, that there had been numerous complaints concerning the "services" provided by the Humphreys, that the Humphreys had cashed a large number of cashier's checks, that Fay Carolyn Humphrey had informed police, in connection with an unrelated theft complaint, that cash had been taken from the mattress in the Humphreys' bedroom and that she and her husband operated a business from their

registers, checks, U.S. currency, deposit slips, receipts, bank statements, cashier's checks, association checks, check order forms, new account information forms, wire transfers and receipts, signature cards, correspondence, and all other documents relating to banking, banking transactions, and transactions at savings and loan institutions, and in particular all documents relating to the purchasing, cashing, transferring and depositing of cashier's checks.
3. Credit cards, debit cards, and all statements, receipts, applications, letters, notices, and other documents which relate to the use of credit cards or debit cards.
4. Computer storage devices containing records, documents, and other information described above in paragraphs 1 thru 3, and related equipment and materials for adequately retrieving and reviewing the information, including central processing units, printers, monitors, floppy discs and instruction manuals which could be used to store information regarding customer files and banking information.

home.  The question before us is whether the affidavit supports the broad language of the search warrant authorizing the search of the Humphreys' home.  We conclude that it does.

We have previously held that a warrant may satisfy the requirements of the Fourth Amendment even though it describes the objects to be seized only in generic terms.  See Williams v. Kunze, 806 F.2d 594, 598 (5th Cir. 1986), see also United States v. Webster, 734 F.2d 1048, 1055 (5th Cir.), cert. denied, 469 U.S. 1073 (1984) (holding that in situations which make detailed particularity impossible then "generic language suffices if it particularizes the types of items to be seized").  In Kunze, we upheld an "all records" search of a business "[w]here probable cause exist[ed] to believe that an entire business was merely a scheme to defraud, or that all the records of a business are likely to constitute evidence."  Id.  Thus, the warrant in this case would be valid had it authorized a search of a business rather than a home, because, undoubtedly, the affidavit supports the conclusion that the entire business operated by the Humphreys was merely a scheme to defraud.  The warrant, however, authorized the search of the Humphreys' home, and we must decide whether, and when, the reasoning of Kunze should be extended to cover searches of private residences.

The First Circuit addressed the identical issue in United States v. Falon, 959 F.2d 1143 (1st Cir. 1992).  There the court held that the "all records" doctrine must be applied with caution

when an allegedly fraudulent business was operated out of a residence.  Id. at 1148.  The court stated that "it would require extraordinary proof to demonstrate that an individual's entire life is consumed by fraud and that all records found in the home were subject to seizure," and that absent such a showing, the "broad categories of items that may be seized pursuant to an 'all records' search of a home must be sufficiently linked to the alleged criminal activity so as to distinguish them from innocent personal materials."  Id.  We agree with the First Circuit that the Fourth Amendment requires much closer scrutiny of an all records search of a residence; however, we conclude that, in the present case, the search warrant was valid in the light of the pervasive nature of the fraud, the considerable overlap of the Humphreys' business and personal lives, and the limitation of the warrant to records pertaining to financial transactions.  The district court, therefore, did not err in refusing to suppress the evidence gained through the search.[2]

B

Next, the Humphreys assert that the trial court committed reversible error by excluding testimony from their former lawyer concerning a civil action filed by the Humphreys against James

---

[2]Our holding today should not be read as a broad authorization for the issuance of all records searches of homes.  We caution law enforcement agencies to draft warrants carefully to ensure the mandates of the Fourth Amendment are satisfied and note that it is only in extreme cases, such as the one before us today, that we will uphold warrants of this type.

Dunn, which resulted in an award of commissions to the Humphreys as a result of their loan-finding efforts.

The trial court's decision concerning the admissibility of evidence is reviewed on appeal for abuse of discretion. Jon-T Chems., Inc. v. Freeport Chem. Co., 704 F.2d 1412, 1417 (5th Cir. 1983). Additionally, even if an abuse of discretion occurred, we must consider whether the error was harmless or whether the error requires reversal because, when viewed in the light of the entire record, it affected the substantial rights of the defendants. United States v. Skipper, 74 F.3d 608, 612 (5th Cir. 1996).

The evidence regarding the prior successful action for commissions was properly excluded because the testimony of the lawyer was not the best evidence of the judgment. See Fed. R. Evid. 1002; see also Morgan v. Dun & Bradstreet, Inc., 421 F.2d 1241, 1243 (5th Cir. 1970) (pre-rules of evidence case holding that testimony concerning contents of court documents "was properly excluded as not the best evidence"). The Humphreys offered no documentary proof of the judgment and, therefore, the exclusion of the testimony was not erroneous.

However, even if we were convinced that the exclusion was error, the error was harmless. The Humphreys offered the evidence to establish their good faith and their lack of criminal intent in the operation of their business. There was other evidence on this issue, including testimony from a satisfied borrower, testimony from an individual who, on occasion, provided funding to persons

-8-

working through the Humphreys and testimony regarding efforts to cooperate with the Better Business Bureau and to collect commissions. It cannot be said, therefore, that the exclusion of the testimony regarding a single prior civil action harmed the Humphreys, as the jury was presented with other evidence on the same issues of good faith and lack of criminal intent.

The exclusion of the evidence regarding the prior civil action against James Dunn does not rise to the level of reversible error.

C

Fay Carolyn Humphrey argues that the evidence was insufficient to convict her on five of the counts on which she was convicted. This court will not reverse a guilty verdict unless, after viewing the evidence, and all reasonable inferences drawn from the evidence, in the light most favorable to the government, the court concludes that no rational jury could have found the essential elements of the offense beyond a reasonable doubt. United States v. Duncan, 919 F.2d 981, 990 (5th Cir. 1990), cert. denied, 500 U.S. 926 (1991).

Fay Carolyn Humphrey's argument on appeal is that, with respect to five of the counts, she cannot be convicted because the victims of those counts testified that they dealt only with Bruce Henry Humphrey and because there was no jury instruction on aiding and abetting. In order to obtain a conviction under 18 U.S.C. § 1341, the government must show that the defendant "devised a scheme to defraud and . . . for the purposes of executing the

scheme, "knowingly cause[d] [an article] to be delivered by mail." United States v. Blankenship, 746 F.2d 233, 240 (5th Cir. 1984) (alterations in original). A defendant "'causes' an article to be delivered by mail if he acts with the knowledge that the use of the mail will follow in the ordinary course or if use of the mail is reasonably foreseeable." Id. There is no requirement of direct contact with the victims in the offense of mail fraud, and, thus, Fay Carolyn Humphrey's argument fails.[3]

                                   D

The Humphreys also appeal the refusal of the trial judge to issue two requested jury instructions. We review the decision of a trial judge to refuse to give an instruction for abuse of discretion. United States v. Thomas, 12 F.3d 1350, 1365 (5th Cir.), cert. denied, 114 S.Ct. 1861 (1994). The Humphreys requested that the jury receive an instruction explicitly stating that they were under no obligation to call any witnesses on their behalf and another instruction specifically relating to the credibility to be given to the testimony of law enforcement officials who appeared as witnesses. The trial judge refused both instructions. The jury was instructed, however, that the defendant

---

[3]Two of the counts that Fay Carolyn Humphrey appeals on this basis charge her with wire fraud in violation of 18 U.S.C. § 1343. The same analysis used with respect to the mail fraud charges applies to the convictions for wire fraud. See United States v. Snyder, 505 F.2d 595, 600-01 (5th Cir. 1974), cert. denied, 420 U.S. 993 (1975) (indicating that no direct participation in use of "wires" is required, only that use was foreseeable consequence of appellant's acts).

had no duty to "produce any evidence at all" and also was instructed that they were to determine the credibility of all witnesses and, in that context, should consider whether the "witness [had] any relationship with either the government or the defense." The jury was properly instructed, and the instructions offered by the Humphreys were merely slight variations on the instructions actually given. The trial judge did not abuse his discretion in refusing the requested instructions.

III

A

The Humphreys also appeal from the sentences imposed by the district court. They first argue that the sentence was based upon an incorrect calculation of loss. The calculation of amount of loss is a factual finding and will be disturbed on appeal only if clear error is found. United States v. Wimbish, 980 F.2d 312, 313 (5th Cir. 1992), cert. denied, 508 U.S. 919 (1993). In order to satisfy this clear error test all that is necessary is that the finding be "plausible in light of the record as a whole." Id. The sentencing court "need not determine the loss with precision," as long as its estimate is "reasonable . . . given the available information." U.S.S.G. § 2F1.1, Application Note 8.

The presentence reports prepared on each of the Humphreys recommended a twelve-level upward adjustment based upon a calculated loss of $1.8 million. See U.S.S.G. § 2F1.1(b)(1)(M). The loss was calculated based upon a journal found at the

-11-

Humphreys' home, which contained a list of names, dates and numbers--largely matching the amount required by the Humphreys to be deposited by loan applicants. The district judge adopted the recommendations of the presentence reports and sentenced the Humphreys based on the $1.8 million loss figure. The Humphreys contend that the journal was unreliable, that it contained legitimate transactions that the government failed to investigate, noting that at least one person--of the over 600 included in the book--obtained financing through their services, and that the government failed to prove that all of the transactions in the book were related to a common scheme or plan as required by the sentencing guidelines. This showing by the Humphreys does not satisfy the standard for clear error. Their arguments do not demonstrate that the conclusion of the district court was the result of a misapplication of the sentencing guidelines, because the journal, when viewed in the light of the evidence presented in the entire trial, contains sufficient indicia of reliability to serve as the basis for application of the sentencing guidelines.

B

The Humphreys also contend that their sentences should be reversed and the case remanded for resentencing because the trial judge impermissibly considered their socioeconomic status--their inability to make restitution--in determining the length of their sentences. The Humphreys failed to object on this basis below and, thus, our court reviews for plain error. To demonstrate plain

error, the Humphreys must show:  (1) that there is an error, (2) that it is clear or obvious, and (3) that it affects their substantial rights.  See Fed. R. Crim. P. 52(b).

Trial judges are expressly prohibited from considering a defendant's socioeconomic status in the context of sentencing.  See 28 U.S.C. § 994(d); U.S.S.G. § 5H1.10.  The district court judge who sentenced the Humphreys stated,

> But because you took these hundreds and thousands and millions of dollars from these people and are not going to pay any of that back, I think a sentence at the top of the guideline range is appropriate in this case for the kind of money that you have taken.

Even if these remarks are construed to mean that the judge considered the ability of the Humphreys to make restitution in calculating their sentences, it would not amount to plain error. It is not clear, however, that any error occurred.  The judge seems to focus on the amount of money taken in the scam and mentions restitution in noting the real loss to the victims.  In any event, it certainly cannot be said that the error was clear or obvious, because the sentences handed down were within the guidelines, and because, when interpreted in the light most favorable to the defendants, the meaning of the trial judge's remark is only imprecise.

The Humphreys fail to make the requisite showing of plain error, and, therefore, this point of appeal does not require remanding the case for resentencing.

IV

We find no merit in any of the points of error advanced by the Humphreys; therefore, the judgment of the district court is

A F F I R M E D.