IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-11097
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARVIN B CHERNA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

August 4, 1999

Before KING, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

KING, Chief Judge:

Defendant-appellant Marvin B. Cherna appeals his conditional plea of guilty to one count of mail fraud in violation of 18 U.S.C. § 1341 on the ground that the district court erred in denying his motion to suppress evidence obtained pursuant to an allegedly unconstitutional search warrant. Because we find that the executing officers acted in objectively reasonable good-faith reliance on the warrant, we affirm.

**I. FACTUAL AND PROCEDURAL HISTORY**

In 1997, defendant-appellant Marvin B. Cherna was the executive director of Help Hospitalized Children's Fund (HHCF) and American Veterans' Relief Fund (AVRF), two charities based in Dallas, Texas. On May 19, 1997, Special Agent Loretta Smitherman

of the Federal Bureau of Investigation (FBI) applied to Magistrate Judge John Tolle of the Northern District of Texas for a warrant to search Cherna's business and residence, both of which, she alleged, were located at 7610 Meadow Oaks Drive in Dallas, Texas.  The application for the warrant referred to two documents:  Attachment A, which set forth the place to be searched, and Attachment B, which described the evidence to be seized.  Smitherman's affidavit in support of probable cause was also attached to the application.  Without hearing oral testimony, Magistrate Judge Tolle issued a search warrant that authorized officers to search the premises described in Attachment A and to seize the property described in Attachment B.  Attachment A stated that the "offices of HELP HOSPITALIZED CHILDREN'S FUND (HHCF) and AMERICAN VETERANS' RELIEF FUND (AVRF) are located at 7610 Meadow Oaks Drive, Dallas, Texas including all rooms/parts of the residence and the attached garage."  Attachment B described the evidence subject to seizure thus:  "Records and items related to Fraud by Wire and Mail Fraud as described in the affidavit of FBI agent Loretta Smitherman, within the premises of 7610 Meadow Oaks Drive, Dallas, Texas, including, but not limited to the following, however maintained," followed by a list of twenty-six categories of evidence, primarily written and electronic documents.  Smitherman's affidavit was not, however, physically attached to the search warrant.

2

The next day, May 20, 1997, six FBI agents executed the search warrant under Smitherman's direction.  The agents were required by FBI policy to read the warrant, the accompanying documents, and the affidavit prior to participating in the search and to sign the back of the warrant to show that they had done so.  Smitherman did not know whether several other FBI employees who assisted in the search but did not participate in seizing evidence read the affidavit.  Cherna was given a copy of the warrant and Attachments A and B but, although it was present in Smitherman's vehicle throughout the search, he was not shown the affidavit because it had been placed under seal.  Upon entering the premises at 7610 Meadow Oaks Drive, the agents determined that four rooms were being used as office space and that the garage had been converted into a telemarketing room and a storage room for records.  They did not limit their search to only these rooms, however, but also searched all areas in the residence where records might be stored, including the bedroom, kitchen, and living room.  At the conclusion of the search, the agents left with Cherna the warrant, the attachments, and an inventory of seized property.

On March 3, 1998, a grand jury in the Northern District of Texas returned an indictment charging Cherna with thirteen counts of mail fraud perpetrated by soliciting funds for two non-profit entities and then converting the contributions received to his own use.  Cherna filed a motion to suppress all evidence seized in the May 20, 1997 search.  The district court denied this

3

motion, concluding that "Attachment B to the search warrant sets out with sufficient particularity twenty-six types of items to be seized so as to remove the warrant from the purview of a general warrant" and, in the alternative, that "the officers executing the warrant acted in good faith and in reasonable reliance upon the warrant's validity, thereby avoiding the Fourth Amendment's exclusionary rule." Cherna then entered a conditional plea of guilty to one count of the indictment, reserving his right to appeal the district court's adverse ruling on his motion to suppress. The district court sentenced him to a four-year prison term and a $12,500.00 fine. Cherna appealed.

## II.  STANDARD OF REVIEW

When reviewing the denial of a motion to suppress, we review factual findings for clear error and the trial court's conclusions as to the constitutionality of law enforcement action and the sufficiency of a warrant de novo. See United States v. Kelley, 140 F.3d 596, 601 (5th Cir.), cert. denied, 119 S. Ct. 186 (1998). The district court's determination of the reasonableness of a law enforcement officer's reliance upon a warrant issued by a magistrate--for purposes of determining the applicability of the good-faith exception to the exclusionary rule--is also reviewed de novo. See United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir. 1992).

## III.  DISCUSSION

On appeal, Cherna attacks the search warrant on two grounds. First, he contends that it is an unconstitutional general

4

warrant. Cherna argues that the warrant's general grant of authority to seize "[r]ecords and items related to Fraud by Wire and Mail Fraud as described in the affidavit of FBI agent Loretta Smitherman . . . , including, but not limited to" twenty-six categories of evidence does not describe the evidence sought with sufficient particularity. Although the warrant refers to Smitherman's affidavit, Cherna contends, the affidavit cannot save the warrant because it was neither attached thereto nor shown to Cherna. Second, Cherna maintains that the warrant was unsupported by probable cause.

We employ a two-step process for reviewing a district court's denial of a motion to suppress when a search warrant is involved. See United States v. Lampton, 158 F.3d 251, 258 (5th Cir. 1998), cert. denied, 119 S. Ct. 1124 (1999). First, we determine whether the good-faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897 (1984), applies. If so, we end our analysis and affirm the district court's decision to deny the motion to suppress. See Satterwhite, 980 F.2d at 320. If not, we proceed to the second step, in which we "'ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed.'" United States v. Pena-Rodriguez, 110 F.3d 1120, 1129 (5th Cir.) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)), cert. denied, 118 S. Ct. 71 (1997). If the good-faith exception applies, we need not reach the question of probable cause. See id.; see also United States v. Craig, 861 F.2d 818, 820 (5th Cir. 1988)

5

("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under Leon will resolve the matter.").

We begin our analysis of the good-faith exception with Leon. In that case, the Supreme Court held that the Fourth Amendment does not require the suppression of evidence obtained as a result of objectively reasonable reliance on a warrant, even if the warrant is subsequently invalidated. See Leon, 468 U.S. at 922. Although the Court noted that "[w]hen officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time," id. at 924, it also cautioned that "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued," id. at 922-23 (footnotes and citation omitted). Thus, the good-faith exception does not apply when "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Id. at 923. Similarly, suppression remains an appropriate remedy where the issuing magistrate "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979);

6

in such circumstances, no reasonably well trained officer should rely on the warrant." Id. Nor is the exception available to an officer who relies on a warrant based on an affidavit "'so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable.'" Id. (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring)). "Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid." Id.

Cherna contends that the last three situations obtain here. First, he asserts that "the Warrant represents a complete abdication by the Magistrate Judge of his authority to determine what can and cannot be seized." As we explained above, Leon teaches that the good-faith exception will not apply where the magistrate conducted himself as did his counterpart in Lo-Ji Sales. In that case, an investigator purchased two films from a so-called "adult" bookstore, concluded that they violated state obscenity laws, and applied for a warrant to search the store, representing that not only copies of the films but other "similar items" would be found there. See Lo-Ji Sales, 442 U.S. at 321. The town justice viewed the films and issued a search warrant authorizing seizure of copies of the two films and "[t]he following items that the Court independently [on examination] has determined to be possessed in violation of Article 235 of the

Penal Law," followed by a blank space. Id. at 321-22. The justice then accompanied law enforcement officers to the store and conducted a six-hour search during which he examined films, books, and magazines free of charge and ordered the officers to seize such items as he thought there was probable cause to believe obscene. See id. at 322-23. The Supreme Court held that the search violated the Fourth Amendment. It concluded that although "a warrant authorized by a neutral and detached judicial officer is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime," id. at 326 (internal quotation marks omitted), the town justice in Lo-Ji Sales "did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure," id. Instead, he conducted himself as an "adjunct law enforcement officer." Id. at 327.

After carefully reviewing the record, we conclude that there is no evidence that the issuing magistrate in this case abandoned his role as a neutral and detached judicial officer within the meaning of Lo-Ji Sales. Indeed, Cherna does not so much as allege that Magistrate Judge Tolle was biased. Cf. United States v. Breckenridge, 782 F.2d 1317, 1321 (5th Cir. 1986) ("The 'absence of a neutral and detached magistrate' exception to Leon's good faith may also extend to situations in which officers while presenting the affidavit realize that the magistrate served only to rubber-stamp a previous decision reached by the

8

police."). Nor does he assert that the magistrate judge participated in the seizure of evidence so as to become an "adjunct law enforcement officer." Lo-Ji Sales, 442 U.S. at 327; cf. United States v. McKeever, 906 F.2d 129, 131-32 (5th Cir. 1990) (considering defendant's argument that evidence should be suppressed because magistrate was a former reserve police officer and visited the site of the search). We simply see no evidence that Magistrate Judge Tolle "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales . . . ." Leon, 468 U.S. at 923.[1]

Cherna also argues that the good-faith exception does not apply in this case because the warrant was insufficiently supported by a showing of probable cause. Under Leon, an officer may not reasonably rely on a warrant "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (internal quotation marks omitted). In general, "[a]n officer may rely in good faith on the validity of a warrant so long as the warrant is supported by

---

[1] Cherna does suggest that Magistrate Judge Tolle abandoned his judicial role by issuing a search warrant that was insufficiently particular and supported by probable cause to pass Fourth Amendment muster. Under Leon, however, excessive generality and lack of probable cause are independent reasons not to apply the good-faith exception, and we therefore consider Cherna's arguments in this regard below. Cf. United States v. Tedford, 875 F.2d 446, 449-50 (5th Cir. 1989) (analyzing as a single issue defendant's contentions that judge "abandoned his detached and neutral role by merely ratifying the officers' conclusions and issuing the warrant on the basis of 'bare bones' affidavits" and that "officers' reliance on the warrant was unreasonable because the underlying affidavits were completely 'lacking in indicia of probable cause'").

9

more than a bare bones affidavit." United States v. Cisneros, 112 F.3d 1272, 1278 (5th Cir. 1997) (internal quotation marks omitted). In evaluating whether the affidavit in this case justifies application of the good-faith exception, however, we must keep in mind that it is more difficult to demonstrate probable cause for an "all records" search of a residence than for other searches. United States v. Humphrey, 104 F.3d 65, 68–69 (5th Cir.), cert. denied, 520 U.S. 1235 (1997). In Humphrey, a fraud case, we upheld a warrant authorizing the seizure of all of the defendants' financial and business records from their residence because a three-page affidavit from an FBI agent demonstrated that the fraud was pervasive, that there was considerable overlap between the defendants' personal and business lives, especially in that they used their home as an office, and that the defendants provided services about which there had been many complaints, cashed a large number of cashier's checks, and stored cash under their mattress. Id. We emphasized, however, that our holding "should not be read as a broad authorization for the issuance of all records searches of homes. . . . [I]t is only in extreme cases, such as the one before us today, that we will uphold warrants of this type." Id. at 69 n.2.

Even in light of the fact that the warrant in this case authorized an all records search of Cherna's home, we do not think probable cause was so lacking as to "render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923

10

(internal quotation marks omitted).  The search warrant application included an eleven-page affidavit from FBI Special Agent Loretta Smitherman.  Smitherman stated that she had been an FBI agent for six years.  She had investigated Cherna, executive director of HHCF and AVRF.  She discovered that in 1995 and 1996, HHCF solicited donations by representing that the money would benefit hospitalized children in the donor's community and that HHCF was a member of certain prestigious charitable organizations.  In many instances, however, HHCF representatives were unable to name any hospitals that would receive donations, and hospital administrators in the relevant communities denied having heard of or receiving assistance from HHCF.  Furthermore, representatives of several charitable organizations in which HHCF claimed membership stated that HHCF neither belonged to those groups nor had permission to use their names.  HHCF maintained numerous local bank accounts, despite its own accountant's advice that it was financially and logistically preferable to have only one account, because, in Cherna's words, "the donors want to feel as if the money they are pledging is being spent in there [sic] area of the country."  Smitherman also discovered that, although tax records showed that HHCF executives served without compensation, HHCF regularly paid Cherna and an HHCF board member thousands of dollars, and numerous checks for what appeared to be personal expenses had been written on HHCF's account.

In addition, Smitherman related that she had reviewed ninety-three affidavits, provided to her by the Massachusetts

11

Attorney General's Office, in which private citizens described how AVRF telemarketers urged them to donate money, representing that (1) their donations would benefit local veterans' hospitals, (2) retired veterans would pick up the donations, and (3) the donations would be used to purchase medical supplies for hospitalized veterans. In fact, AVRF donated only $650.00 to Massachusetts veterans' hospitals during the years 1994 through 1996. AVRF's nationwide donations to hospitals run by the United States Department of Veterans' Affairs for the tax year ended January 31, 1996 totaled only one-tenth of one percent of its total income.

Finally, Smitherman averred that she had reason to believe that HHCF and AVRF had been and still were being operated out of Cherna's residence because, on February 13, 1997, two employees of Thomas Ewbank's accounting firm had been inside Cherna's home, where they observed two rooms set up as offices for HHCF and AVRF, and an auditor from the firm was scheduled to meet with Cherna there on the date Smitherman executed her affidavit, May 19, 1997. Furthermore, on April 18, 1997, a woman identifying herself as an AVRF employee accepted service of process at Cherna's home, and as of May 11, 1997, the electric account for the residence was listed in HHCF's name. Smitherman concluded that, after reviewing her affidavit in light of Humphrey with two Assistant United States Attorneys, she believed that Cherna's business activities were "merely a scheme to defraud" and that

12

there was "obviously considerable overlap of Cherna's personal life and business life."

Smitherman's affidavit was not so "bare bones" as to render all belief in the existence of probable cause for an all records search unreasonable. Smitherman averred that Cherna operated his businesses from his home, that he used business funds to pay for what appeared to be personal expenses, and that HHCF and AVRF misrepresented the nature and amount of their charitable work in an effort to increase donations. She requested permission to seize all records and items relating to the mail and wire fraud scheme she believed to be in progress. Cf. Humphrey, 104 F.3d at 68-69 (finding probable cause for an all records search of defendants' home based on evidence that they used residence as office, engaged in suspicious financial transactions and provided services about which there had been many complaints). Although many of the misrepresentations described in Smitherman's affidavit took place in 1995 and 1996, one to two years before Smitherman applied for the warrant, she explained that, based on her conversations with employees of Ewbank's accounting firm, the acceptance of process by an AVRF employee at Cherna's residence only a month before the application, and the evidence that, a week before the search, the electric account for Cherna's residence was in the name of HHCF, it was likely that the records sought were still located at Cherna's home. Especially in light of the facts that HHCF and AVRF were ongoing businesses and that financial records typically are retained for long periods of

13

time, we cannot say that Smitherman's affidavit was based on stale information.  See United States v. Webster, 734 F.2d 1048, 1056 (5th Cir. 1984) ("[W]hen the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale."); United States v. Freeman, 685 F.2d 942, 952 (5th Cir. 1982) (recognizing that bank records are likely to be kept for long periods of time).  Of course, there could be, as Cherna argues in his brief, innocent explanations for the evidence Smitherman discovered, but an affidavit need not present a watertight criminal case to support good-faith reliance on a warrant.[2]

Finally, Cherna maintains that the warrant is so lacking in particularity that the executing officers could not reasonably have presumed it to be valid.  Cherna points out that the warrant authorized the seizure of "[r]ecords and items related to Fraud by Wire and Mail Fraud as described in the affidavit of FBI Loretta Smitherman" but failed to include the affidavit as an attachment.  No law enforcement officer, he claims, could reasonably believe that a warrant for records and items relating

---

[2]  Indeed, we have emphasized that probable cause to search is present where there is adequate "'information to allow the conclusion that a fair probability existed that seizable evidence would be found'" on the premises.  Cisneros, 112 F.3d at 1279 (quoting United States v. Restrepo, 994 F.2d 173, 189 (5th Cir. 1993)).  While Cherna's arguments might have been convincing to a jury had he gone to trial, they do not convince us that the lack of probable cause was so obvious as to deprive the officers of the good-faith exception to the exclusionary rule.

to the broad crimes of mail and wire fraud is sufficiently particular to satisfy the Fourth Amendment.

The seminal Supreme Court case on particularity and the good-faith exception is Massachusetts v. Sheppard, 468 U.S. 981 (1984). That case concerned a warrant authorizing a search for "controlled substances" that was accompanied by a detailed affidavit indicating that the affiant wished to search for evidence relating to a homicide investigation. See id. at 985-86. The defendant complained that the warrant was insufficiently particular. See id. at 987. It was undisputed, however, that the issuing judge and the executing officers knew the contents of the affidavit and the focus of the search and that the affiant had, in fact, pointed out the discrepancy to the judge, who had assured him that the necessary corrections would be made. See id. at 986. The Court concluded that the officers' good-faith reliance on the warrant was objectively reasonable because the affiant prepared an affidavit that was reviewed and approved by the district attorney, presented the affidavit to a neutral judge, who found that it established probable cause for the search requested by the affiant, and informed the judge that changes might need to be made. He then observed the judge made some changes and received the warrant and the affidavit. See id. at 989. "At this point, a reasonable police officer would have concluded . . . that the warrant authorized a search for the materials outlined in the affidavit." Id.

15

We have considered similar situations in this circuit. In United States v. Beaumont, 972 F.2d 553, 560 (5th Cir. 1992), for example, the warrant contained only a generalized statement that "evidence of the commission of a criminal offense as well as contraband abd [sic] the fruits of crime" were to be seized. The warrant was accompanied by an affidavit that contained a detailed description of the items sought, but it did not refer to the affidavit at all. See id. We found that although a warrant that relies on an affidavit to meet the Fourth Amendment particularity requirement must incorporate the affidavit by reference, see id. at 560-61, the good-faith exception applied:

> In the instant case, there was a probable cause determination made by the state judge, the affidavit provided specific information of the objects of the search, the executing officer was the affiant, the additional officers making the search knew what was to be searched for, and, finally, the warrant could easily have been made valid by the insertion of the phrase "see attached affidavit."

Id. at 561 (footnote omitted). For the same reasons, we held in United States v. Shugart, 117 F.3d 838, 845-46 (5th Cir.), cert. denied, 118 S. Ct. 433 (1997), that officers reasonably could have relied on a warrant that was insufficiently particular on its face and did not incorporate the affidavit on which it was based.

This precedent convinces us that the warrant in this case was not so lacking in particularity that the executing officers could not reasonably presume it to be valid. As in Sheppard, Beaumont, and Shugart, the issuing judge in this case made a probable cause determination, the affidavit explained in detail

16

the alleged mail and wire fraud scheme that was the target of the investigation and search, the officer in charge of the search, Smitherman, was the affiant, and the other FBI agents who participated in the search read the affidavit before beginning it.  Even assuming that the absence of the affidavit rendered the warrant constitutionally defective, this defect could have been remedied with only minor corrections, such as the attachment of the affidavit.  Cf. Sheppard, 468 U.S. at 990 n.7 ("This is not an instance in which 'it is plainly evident that a magistrate or judge had no business issuing a warrant.' . . . Indeed, Sheppard admits that if the judge had crossed out the reference to controlled substances, written 'see attached affidavit' on the form, and attached the affidavit to the warrant, the warrant would have been valid."); Shugart, 117 F.3d at 845-46 (noting that a warrant that did not "incorporate" an affidavit could have been made valid with minor corrections, such as a reference to and attachment of the affidavit); Beaumont, 972 F.2d at 562 ("[T]he warrant could easily have been made valid by the insertion of the phrase 'see attached affidavit.'").  Smitherman was prevented from attaching her affidavit to the warrant or serving it on Cherna, however, because it had been placed under seal.  In issuing a search warrant and sealing the affidavit on which the warrant is based, the magistrate judge was essentially assuring Smitherman that the warrant, unattached to the affidavit, was sufficient to authorize the search she had requested.  The Fourth Amendment does not demand that the

17

executing officers question his decision and determine for themselves whether the warrant is, in fact, valid. "Whatever an officer may be required to do when he executes a warrant without knowing beforehand what items are to be seized, we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." Sheppard, 468 U.S. at 989-90 (footnote omitted).

Nor is this a case in which the non-attachment of Smitherman's affidavit made the warrant so obviously defective that the officers could not reasonably have relied on it. First, Attachment B, expressly mentioned in the warrant and attached thereto, referred to Smitherman's affidavit and described in considerable detail twenty-six categories of evidence to be seized. A reasonable executing officer, relying on the magistrate judge's issuance of the warrant and sealing of the affidavit, could have believed that the reference to the affidavit and the rather lengthy list that followed satisfied the Fourth Amendment's particularity requirement. Cf. United States v. Moser, 123 F.3d 813, 823 (5th Cir.) (approving search warrant authorizing seizure of "[r]ecords relating to the production, advertising, ordering, sale, mailing and shipment of material involved in the use of 'Certified Money Orders' by U.S.A. First and O.M.B., W.D. McCall. Such records, files and promotional material include but are not limited to . . . ."), cert. denied, 118 S. Ct. 613 (1997).

18

Second, as Cherna concedes, where a warrant relies on an affidavit to specify the objects of the search, it is not entirely clear from circuit precedent that the affidavit must be physically attached to the warrant or served on the defendant. Compare United States v. Haydel, 649 F.2d 1152, 1157 (5th Cir. Unit A July 1981) ("If, as is the case here, the warrant is ambiguous, but fairly directs attention to the place actually searched, and if the affidavit supporting the warrant is attached to the warrant when issued, the affidavit may be considered to clarify an ambiguity on the face of the warrant.  The affidavit must be attached to the warrant so that the executing officer and the person whose premises are to be searched both have the information contained in the affidavit, in addition to what is said on the face of the warrant.") (citation omitted and emphases added), opinion corrected on reh'g on other grounds, 664 F.2d 84 (5th Cir. Unit A Dec. 1981), with Shugart, 117 F.3d at 845 ("In addition, this court has held that the particularity requirement may be satisfied 'by reliance on an affidavit when the affidavit is incorporated by reference into the warrant.'") (quoting Beaumont, 972 F.2d at 561) (emphasis added); United States v. Wuagneux, 683 F.2d 1343, 1351 n.6 (11th Cir. 1982) (noting, shortly after the Eleventh Circuit split from the Fifth, that "although the record in Haydel was not entirely clear on whether the affidavit was physically attached, the record did indicate that it was available at the search site and that the searching agents knew what they were looking for" and opining that Haydel

19

"mandates a more flexible approach" than a strict requirement that the affidavit be physically attached to the warrant or served on the defendant); United States v. Cook, 657 F.2d 730, 736 (5th Cir. Unit A Sept. 1981) ("The affidavit, which was referred to and which accompanied the warrant, supplied a particular description . . . .") (emphasis added). But see United States v. McGrew, 122 F.3d 847, 850 (9th Cir. 1997) ("If the government wishes to keep an affidavit under seal, it must list the items it seeks with particularity in the warrant itself. It is the government's duty to serve the search warrant on the suspect, and the warrant must contain, either on its face or by attachment, a sufficiently particular description of what is to be seized. . . . If the 'incorporated' affidavit does not accompany the warrant, agents cannot claim good faith reliance on the affidavit's contents."); United States v. Dahlman, 13 F.3d 1391, 1395 (10th Cir. 1993) (holding that affidavit could not cure particularity problem because, inter alia, there was no indication in the record that affidavit had been "physically attached to the warrant"). Given the state of the law in this circuit, we cannot say that the executing officers could not reasonably rely on the magistrate judge's issuance of the warrant, even though he simultaneously sealed the affidavit on which it was based.

Finally, we must address Cherna's contention that Smitherman's testimony at the suppression hearing "clearly

demonstrates the absence of objective good faith." According to

Cherna,

> Agent Smitherman candidly acknowledged that she drafted the
> Warrant to allow her the unfettered discretion to seize
> whatever she deemed to be of interest. That is precisely
> the type of governmental "roaming" that the Fourth
> Amendment's particularity requirement was designed to
> prohibit. Thus, regardless of Agent Smitherman's subjective
> intent, the objective record demonstrates that the good
> faith exception cannot save this Warrant.

(citation omitted). We note as an initial matter that this

argument is more correctly characterized as an allegation that

Smitherman acted in "subjective," not "objective," bad faith:

Cherna claims that Smitherman drafted the warrant so as

intentionally to flout the Fourth Amendment's particularity

requirement. The district court, however, found that "the

officers executing the warrant acted in good faith." At the

suppression hearing, the following colloquy took place between

Smitherman and Cherna's counsel:

> Q. Can you think of one thing that wouldn't relate to it?
> If his entire life is consumed by fraud, wouldn't everything
> inside 7610 Meadow Oaks, based upon your affidavit, be
> subject to seizure under the terms of that warrant?
>
> A. Photographs of his children wouldn't be seized, you
> know, religious materials.
>     You want me to make up a list of things that wouldn't
> be seized?
>
> Q. No. I think--
>
> A. Anything that didn't have to do with fraud wouldn't be
> seized.
>
> Q. But the question I have is, how would you draw the line
> if he paid for the camera that took those pictures, paid to
> develop--cost of those picture with the proceeds of
> charitable donations, you could seize anything under the
> terms of this warrant.

21

A. No, only things that had to do--that were evidence of mail fraud and wire fraud.

Q. Okay. As set forth in your affidavit?

A. Yes.

Q. And your affidavit just--I'm going to make this very clear, was never given or supplied to Mr. Cherna?

A. That's right.

Q. So he had absolutely no way to determine what the scope of your search would ultimately be?

A. No, he did because I gave him the attachment B that is entitled Property to be Seized.

Q. Which describes the property seized to be records and items related to fraud by wire and mail fraud as described in your affidavit, which was not supplied to him?

A. Yes. But then there are--there is several pages describing the items that will be seized.

Q. Well, are those all of the items that will be seized? Your paragraph--your lead-in paragraph to attachment B says including but not limited to the following.

A. It's--

Q. Doesn't that provide you with the discretion to determine precisely what related to mail fraud or wire fraud?

A. Yes. In case I neglected to put something in important on the list and I found an important piece of evidence, I wouldn't want to be precluded from being able to seize it.

Q. Exercise discretion on site to seize that item?

A. Yes.

While we agree that this testimony is sometimes equivocal, we cannot say that the district court clearly erred in finding that Smitherman acted in good faith. Smitherman did not admit that she had drafted the warrant to give her complete discretion to seize any item she wished; instead, she stated repeatedly that

22

the warrant authorized the seizure only of evidence related to mail and wire fraud as described in her affidavit. While she did testify that the warrant permitted her to exercise some discretion with respect to identifying such evidence, she apparently also believed that Attachment B adequately identified the scope of her search. Quite simply, Cherna can point to no testimony establishing that Smitherman intended to violate the Fourth Amendment. We decline to disturb the district court's finding that she acted in good faith.

We conclude that the good-faith exception to the exclusionary rule applies in this case. "The officers in this case took every step that could reasonably be expected of them." Sheppard, 468 U.S. at 989. Smitherman prepared a detailed affidavit that was reviewed by two Assistant United States Attorneys. She then presented the affidavit to a neutral magistrate judge, who found it sufficient to support probable cause to search Cherna's residence and issued a warrant authorizing such action. Although he sealed the affidavit, the warrant referenced it and contained a list of twenty-six categories of evidence subject to seizure. All the officers who participated in seizing evidence read the affidavit and, therefore, were familiar with the objects of the search. Our law simply does not require a reasonable officer to do more.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

23