UNITED STATES of America

v.

Robert Dewayne SMITH.

No. 4:99–CR–095.

United States District Court,
E.D. Texas,
Sherman Division.

Feb. 1, 2000.

Gerald Wayne Cobb, Philips Hopkins Earnes & Cobb PC, Denton, TX, Robert DeWayne Smith, Denton, TX, for Robert Dewayne Smith, defendant.

## *ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS*

SCHELL, Chief Judge.

This matter is before the court on Defendant Robert Dewayne Smith's Motion to Suppress Evidence (Dkt.# 8) filed on December 16, 1999. On December 23, 1999, the government filed a response in opposition to Smith's motion. During a pretrial hearing and trial scheduling conference on January 3, 2000, the court gave Smith additional time to file a reply to the arguments outlined in the government's response. On January 13, 1999, Smith filed his reply. Having reviewed the parties' submissions and the applicable law, the court now finds that the Motion to Suppress should be DENIED for the reasons outlined below.

### DISCUSSION

Smith challenges the validity of a search warrant issued by a magistrate judge on November 5, 1999, and executed by law enforcement officers the same day. The search stemmed from two anonymous tips received by the Denton County Crime Stopper's Hotline, one on November 3, 1999, and the other two days later. Both calls were apparently made by the same individual and were received by Investigator Mike Ramon of the Denton County Sheriff's Department. During the two calls, the caller informed Investigator Ramon that an individual by the name of Robert Dewayne Smith resided at 706 Campbell Lane in Denton, Texas, and was in possession of assault rifles and handguns at his residence. The caller explained that the information being reported was obtained from one of two females residing at Smith's residence on Campbell Lane. The caller also provided additional details about Smith, including that he was "on the edge of going nuts" because he had lost custody of his son to his ex-wife, that he was a known felon and member of the anti-government group known as the Republic of Texas, that the firearms were being kept in a hidden place at the residence, and that on November 5, 1999, Smith asked his girlfriend to "change the weapons into her name" because of the trouble he had gotten into in the State of Florida. The caller also apparently provided a description of the firearms located at Smith's residence.

Upon receiving those two telephone calls, Investigator Ramon contacted Special Agent Joseph Patterson of the Bureau of Alcohol, Tobacco, and Firearms ("BATF"). Special Agent Patterson immediately began an investigation in an effort to corroborate the information received from the anonymous caller. With the assistance of other agents from the BATF, members of the Denton County Sheriff's Department, and members of the Cooke County Sheriff's Department, Special Agent Patterson was able to confirm that Smith lived at 706 Campbell Lane in Denton, Texas, that Smith was a felon who had three prior felony convictions, that Smith was known to be a member of the Republic of Texas, and that Smith had been previously arrested in the State of Florida as a fugitive from justice. A search of the BATF's National Firearms Tracing Center also revealed that Smith had purchased a handgun in 1987 that was subsequently recovered by law enforcement officials in Florida in 1995.

Based on these findings, the information received from the anonymous caller, including the fact that Smith was reportedly "on the edge of going nuts," and Special Agent Patterson's familiarity with the tendency of felons who have possessed firearms in the past to do so again in the future and to commonly secrete such weapons at their residences, the decision was made to immediately seek a warrant to search Smith's property. The application was submitted to the magistrate judge on November 5, 1999, and the warrant was signed the same day. It is that warrant that Smith now challenges.

The following three issues are before the court: first, whether an evidentiary hearing is necessary to resolve Smith's Motion to Suppress; second, whether the court must decide if the good faith exception to the exclusionary rule applies before reaching the issue of probable cause and, if so, whether the exception applies in this case;

and third, whether the magistrate judge had a substantial basis for concluding that probable cause existed to issue a search warrant in this case.

## A. Necessity of an Evidentiary Hearing

Smith has requested that an evidentiary hearing be held in connection with his Motion to Suppress. The government argues that a hearing is not necessary. In *United States v. Dean*, 100 F.3d 19 (5th Cir.1996), the court discussed when evidentiary hearings are to be held under circumstances such as those present in this case. The court explained: "Evidentiary hearings are not granted as a matter of course; such a hearing is required only if any disputed material facts are 'necessary to the decision of the motion.'" *Id.* at 21. The dispositive issues in this case are legal in nature—i.e., whether the good faith exception to the exclusionary rule applies and whether there was probable cause to issue the search warrant. Because no disputed material facts are necessary to the resolution of those issues, witness testimony is unnecessary and the motion can be resolved on the parties' filings alone. The court thus finds that an evidentiary hearing need not be convened in this case.[1]

## B. Applicability of the Good Faith Exception

■ The next question to be answered is whether in considering the validity of the search warrant in this case the court must first decide if the good faith exception to the exclusionary rule applies. The Fifth Circuit recently answered this question in the affirmative in *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir.1999), wherein it held:

First, we determine whether the good faith exception to the exclusionary rule applies. If so, we end our analysis and affirm the district court's decision to

1. The court notes that Smith was given an opportunity to brief this issue in his recently filed Memorandum in Support of Motion to Suppress but apparently chose not to do so.

deny the motion to suppress. *See United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir.1992). If not, we proceed to the second step, in which we " 'ensure that the magistrate had a substantial basis for ... concluding that probable cause existed.' " *United States v. Pena–Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). If the good faith exception applies, we need not reach the question of probable cause.

Hence, the court will now consider whether the good faith exception does, in fact, apply under the circumstances of this case.

■ The good faith exception to the exclusionary rule was created by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In that case, the Supreme Court held that the Fourth Amendment does not require the suppression of evidence obtained as a result of objectively reasonable reliance on a search warrant even if the warrant is later found to be invalid. *See id.* at 922, 104 S.Ct. 3405. The good faith exception has broad application. For example, the *Leon* Court stated: "When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Leon*, 468 U.S. at 924, 104 S.Ct. 3405. The Fifth Circuit has similarly noted: "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir.1988); *see also United States v. Pigrum*, 922 F.2d 249, 252 (1991) (holding that "when a warrant application is supported by more than a 'bare bones' affidavit ... it is appropriate for officers to rely on the warrant's validity").

■ Notwithstanding the liberal application of the good faith exception, there are four circumstances under which it will be found not to apply: (1) when the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant was based on an affidavit that is so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid. *See Cherna*, 184 F.3d at 407–408. Smith cites the first, third, and fourth circumstances as being present here and preventing application of the good faith exception. The court will consider each in turn.

### 1) *Claim that Affidavit was Misleading*

■ Smith first argues that "although technically true," some of the information provided in the affidavit of Special Agent Patterson was presented in a manner designed to mislead the magistrate judge. More specifically, Smith points to the following examples of misleading information in the affidavit:

1. Special Agent Patterson correctly states that a .45 caliber handgun registered to Smith was recovered by law enforcement officials in Florida but does not give the details of the firearm's recovery or identify who it was recovered from;

2. Special Agent Patterson notes that his November 5, 1999, criminal history search revealed that Smith was arrested in Florida for being a fugitive from justice but does not clarify that the arrest occurred in 1987 or 1988;

3. Special Agent Patterson recites information about Smith's involvement in the Republic of Texas without advising the magistrate judge that Smith worked as an FBI informant in an investigation of the Republic of Texas between December 1996 and March 1997 and that he had been authorized to violate the law during that period of time; and

4. Special Agent Patterson does not inform the magistrate judge that Smith was given permission during the time he was an FBI informant to purchase and possess firearms, including the assault rifle that was later seized at his residence on November 5, 1999.

■ A defendant challenging the applicability of the good faith exception on the ground that the court issuing the warrant was misled by information in the affidavit "bears the burden of establishing by a preponderance of the evidence that the misrepresentation was made intentionally or with reckless disregard for the truth." *United States v. Alvarez,* 127 F.3d 372, 373 (5th Cir.1997). Having carefully reviewed the affidavit in its entirety, the court finds no evidence that Special Agent Patterson intentionally misled the magistrate judge by omitting relevant data about the recovery of Smith's .45 caliber handgun in Florida or that he misrepresented Smith's criminal history. The details about the recovery of Smith's handgun are not a central feature of the affidavit and Special Agent Patterson clearly identifies the dates of all Smith's known convictions elsewhere in his affidavit. The court likewise finds that Smith's arguments about his status as an FBI informant provide no basis for concluding that the Patterson affidavit is misleading. The only evidence that Smith actually worked as an FBI informant is his own conclusory assertion to that effect, and even if true, there is no evidence that Special Agent Patterson had any knowledge of Smith's one-time status as an informant with another law enforcement agency nearly three years ago.

Additionally, even assuming that Smith had "permission to violate the law" and to "purchase and possess firearms" as an FBI informant in late 1996 and early 1997, that fact has no bearing upon the propriety of seeking a search warrant in November 1999 to determine whether Smith was unlawfully possessing firearms. Finally, it defies logic to suggest that Special Agent Patterson should have informed the court that a yet-to-be-discovered assault rifle at Smith's residence was one of the firearms that Smith allegedly had been permitted to possess during his stint as an FBI informant. Special Agent Patterson's affidavit states that he had no personal knowledge of the firearms at Smith's residence independent of the anonymous tip. Obviously, an affiant cannot include information in an application for a search warrant that is not known to him until after the warrant has been executed.

Therefore, Smith's claim that the information noted above was presented in a misleading manner is unpersuasive because he does not argue, let alone establish by a preponderance of the evidence, that Special Agent Patterson presented information to the magistrate judge that he knew or should have known was false. *See Cherna,* 184 F.3d at 407. In fact, he concedes that the information is "technically true" but merely takes issue with the way it was presented. For these reasons, the court declines to adopt Smith's arguments on this point.

### 2) *Claim that Affidavit was Lacking Indicia of Probable Cause*

■ Smith next argues that the good faith exception does not apply because the search warrant was based on an affidavit that was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. In particular, Smith challenges the reasonableness of Special Agent Patterson's reliance on information provided by an anonymous caller whose reliability was completely unknown. Smith also challenges the Patterson affidavit on the ground that the information provided by the tipster was hearsay and, thus, inherently unreliable. The court disagrees that Special Agent Patterson's reliance on the hearsay statements of an anonymous caller renders his affidavit so lacking in indicia of probable cause that the magistrate judge's belief in its existence was entirely unreasonable.

When considering a challenge to a search warrant affidavit, courts must keep in mind that "an affidavit need not present a watertight criminal case to support good-faith reliance on a warrant." *Cherna,* 184 F.3d at 411. An affidavit need only provide the court issuing the warrant with enough information "to allow the conclusion that a fair probability exist[s] that seizable evidence w[ill] be found on the premises [to be searched]." *Id.* at 411 n. 2 (citations and internal quotation marks omitted). In *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court explained that courts are to employ a totality of the circumstances analysis in determining whether an affidavit sets forth sufficient information to conclude that there is probable cause for the issuance of a warrant. The court also explained that uncertainty about an anonymous informant's veracity can be compensated for by other indicia of reliability and trustworthiness. *See id.* at 238–48, 103 S.Ct. 2317.

In looking to see whether there is "other indicia of reliability" surrounding an anonymous tip, one factor courts may consider is the level of specificity or congruity of the reported information. For example, the Fifth Circuit has noted: "Uncertainty about the veracity of an informant can . . . be compensated for by detail of the statement or internal consistency of the statement and surrounding facts." *United States v. Privette,* 947 F.2d 1259, 1262 (5th ·Cir.1991). In this case, the anonymous caller provided fairly detailed information about Smith, including his name, his current address, circumstances about losing custody of his child, the fact that he was a convicted felon, the fact that he was a member of the Republic of Texas, the fact that two females lived at Smith's residence, the fact that automatic weapons and handguns were located at the residence, a description of the firearms in question, the fact that Smith had asked his girlfriend to "change the weapons into her name," and the fact that Smith had gotten into trouble with the law in Florida. The quantity of information supplied by the anonymous caller here and the specificity of that information supports the inference that the tipster was trustworthy.

The reliability of an anonymous informant's tip can also be bolstered by independent police corroboration of the tip. *See Gates,* 462 U.S. at 241–43, 103 S.Ct. 2317. Such is the case here. Through his own independent investigation, Special Agent Patterson was able to corroborate many of the details provided by the anonymous caller. He confirmed, for example, Smith's name, address, felon status, involvement in the Republic of Texas, and prior arrest in Florida. As already noted, the investigation also revealed that Smith had possessed at least one firearm in the past and had a criminal history marked by three felony convictions. When considered in light of all the information uncovered during the police investigation and the fact that Smith's reported possession and concealment of firearms at his residence was consistent with the conduct of felons who have previously possessed firearms, the police corroboration of many of the details provided by the anonymous tipster in this case helps overcome any uncertainty about the tipster's veracity.

Turning to Smith's challenge to the Patterson affidavit on the basis that the information provided by the tipster was hearsay, the court notes that while it is true that the tipster's information qualifies as hearsay because it was obtained from a third party rather than from personal observation, it is well settled that an affidavit may rely on hearsay so long as the affidavit presents a substantial basis for crediting the hearsay. *See United States v. Satterwhite,* 980 F.2d 317, 321 (5th Cir.1992) (citing *Gates,* 462 U.S. at 242, 103 S.Ct. 2317). The court finds that the high level of detail provided by the anonymous caller when coupled with the independent corroboration of many of those details by law enforcement officials provides a substantial basis for crediting

the caller's hearsay statements. Additionally, the fact that the caller's source of information was identified as being one of two women actually residing at Smith's house provides an additional reason for crediting the hearsay statements.

Unlike a "bare bones" affidavit that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause," *id.*, the affidavit of Special Agent Patterson in this case provided a sufficient factual basis to enable the magistrate judge to make a meaningful probable cause determination. *See Gates,* 462 U.S. at 239, 103 S.Ct. 2317 (describing "bare bones" affidavits as those in which the affiant merely declares his belief that unlawful activity is occurring without providing any facts from which a judicial officer can independently assess the likelihood that the affiant's belief is correct). Under the totality of the circumstances, the court cannot say that the Patterson affidavit was lacking in indicia of probable cause.

### 3) *Claim that Warrant is Facially Deficient*

■■■ Finally, Smith states in passing without elaboration or argument that the good faith exception should not apply here because the warrant was so defective on its face that the executing officers could not have reasonably presumed it to be valid. It is true that if a warrant is so facially deficient "in failing to particularize the place to be searched or the things to be seized" that law enforcement officers will not be justified in presuming the warrant to be valid. *Cherna,* 184 F.3d at 407 (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. 3405). However, the warrant in this case does not suffer from those deficiencies. The warrant authorized law enforcement officers to search Smith's residence and property at 706 Campbell Lane in Denton, Texas, and to seize all firearms and receipts/invoices relating to the purchase or sale of firearms. Nothing about this straightforward and specific description of the place to be searched or the items to be seized would have prevented the executing officers from relying on this warrant in good faith.

In sum, after carefully considering the applicability of the good faith exception to the facts of this case, the court finds that the good faith exception does indeed apply and that the evidence seized need not be suppressed.

### C. Probable Cause for Issuance of Warrant

Although the court need not reach the issue of whether there was probable cause for the issuance of the search warrant in this case given its finding that the good faith exception applies, the court nevertheless finds that, under the totality of the circumstances, there was indeed probable cause to issue a warrant here. "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *Hart v. O'Brien,* 127 F.3d 424, 444 (5th Cir. 1997). The Supreme Court has observed: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. The information provided by Special Agent Patterson in the application for a search warrant here was more than adequate to allow the conclusion that a fair probability existed that evidence of illegal firearm possession would be found on Smith's property. *See Cherna,* 184 F.3d at 411 n. 2. Therefore, Smith's Motion to Suppress Evidence is also denied on the alternative ground that the magistrate judge's finding of probable cause for the issuance of a search warrant in this case

was not unreasonable.[2] *See Leon*, 468 U.S. at 923, 104 S.Ct. 3405.

CONCLUSION

For the reasons given and on the authorities cited, Defendant's Motion to Suppress Evidence is hereby DENIED. It is so ORDERED.

2. In light of the court's ruling on the good faith exception and probable cause issues, the court need not address the government's exigent circumstances argument.